**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 23 B 05875 |
| | ) | |
| Awad Odeh & Julia Salameh | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| Ahmad Zahdan | ) | |
| | ) | Adv. No. 23 A 334 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge David D. Cleary |
| Awad Odeh & Julia Salameh | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Ahmad Zahdan ("Plaintiff") filed a single-count complaint ("Complaint")

against Defendants Awad Odeh ("Defendant Odeh") and Julia Salameh ("Defendant Salameh")

(collectively "Defendants"), seeking a finding that a debt owed by Defendants to Plaintiff is

nondischargeable under section 523(a)(2). Defendants filed a motion to dismiss the complaint

("Motion") under Fed. R. Civ. P. 12(b)(6), asserting that the Complaint should be dismissed

because Plaintiff failed to state a claim for relief and seeks dismissal with prejudice. The court

entered a briefing schedule, Plaintiff filed a response ("Response"), and Defendants filed a reply

("Reply"). Having reviewed the Complaint as well as the papers filed, the court finds that the

Complaint contains sufficient allegations to state a claim for relief against Defendant Odeh, but

fails to state a claim for relief against Defendant Salameh. Accordingly, the Motion is granted in

part and denied in part.

### I. JURISDICTION

This court has subject matter jurisdiction under 28 U.S.C. § 1334 and the district court's Internal Operating Procedure 15(a). This is a core proceeding 28 U.S.C. § 157(b)(2)(I).  Venue is proper under 28 U.S.C. § 1409(a).

### II. BACKGROUND

In resolving a motion to dismiss, the court considers well-pleaded facts and the reasonable inferences drawn from them in the light most favorable to the plaintiff.  *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).  Every allegation that is well-pleaded by a plaintiff is taken as true in ruling on the motion.  *See Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289-90 (7th Cir. 2016).  For purposes of deciding this Motion, the court accepts the following well-pleaded facts as true:

Based on an agreement dated February 1, 2019, Plaintiff, through his company AZ SPE LLC, invested $500,000 in a company called North American Metal Refinery Inc. ("NAR"). The investment had a minimum return of $6,000 and the investment was to be repaid on August 1, 2019.  The agreement was arranged by Defendant Odeh's brother Ehab Odeh.

Ehab Odeh requested an additional loan.  Another agreement was executed on July 15, 2019, under which Plaintiff and AZ SPE LLC would lend an additional $685,000 to NAR.

On August 14, 2019, NAR issued a check payable to AZ SPE LLC for $693,000 'purportedly' in repayment of amounts owed to AZ SPE LLC and Plaintiff.  That check was not honored by the issuing bank.  NAR then issued another check on August 29, 2019, for $351,000, which was also not honored.  NAR issued yet another check on September 2, 2019, this time payable to Plaintiff, for $6,000 with a notation that it is "for profit." This check was also not

honored.  NAR issued a fourth check on September 3, 2019, payable to Plaintiff for $500,000, which was again not honored.

Defendant Odeh delivered one or more of the checks and represented to Plaintiff that one or more of the checks were valid.

Plaintiff, on September 9, 2019, made a demand of NAR, through Ehab Odeh and Defendant Odeh, for payment of the two loans totaling $1,185,000.

To induce Plaintiff to forbear on enforcing his rights under the February, 2019 and July, 2019 agreements, Defendants agreed to execute a new promissory note in the amount of $900,000, payable to Plaintiff ("Note").  The Defendants executed the Note on September 9, 2019.  Defendant Odeh also executed the Note on behalf of Reliant Asset Corp., a corporation owned by Defendant Odeh.

Defendant Odeh represented the $900,000 would be available to be repaid within two weeks, and that NAR would have funds available to repay the $900,000 because it was awaiting clearing of funds by its banks.

In connection with the forbearance and execution of the Note, Defendant Odeh represented to Plaintiff that NAR was legitimate and bought and sold precious metals, had used Plaintiff's loan for that purpose, and would repay the loan from its business operations.

On or prior to the execution of the Note, Defendant Odeh was owner or part owner of NAR and held himself out to be an owner of NAR.  Prior to executing the Note, Defendant Odeh held himself out to Plaintiff to be an agent of NAR.

In connection with the execution of the Note, Defendant Salameh adopted and joined in the representations made by Defendant Odeh.  Both defendants knew their statements to be false and used these false statements to convince Plaintiff to rely on them.

3

Plaintiff did rely on them when deciding to forbear on enforcing his rights to payment against NAR and Defendant Odeh.

These false representations to Plaintiff were part of a larger scheme to fraudulently obtain funds from individuals in the Chicago area.  Defendant Odeh, solely and in collusion with family, fraudulently obtained funds by promising to invest in precious metals.  They promised lucrative returns and would show initial returns to induce further investment.  NAR was operating as a Ponzi scheme.

At the time of executing the Note, NAR did not invest the $1,185,000 from Plaintiff and did not operate a legitimate business, which Defendants knew.  They also knew NAR would be unable to repay the Note.

Plaintiff obtained a judgment against Defendants and the co-obligor Reliant Asset Corp. in Cook County, Illinois, in the amount of $1,037,068.  The amount owed to Plaintiff by Defendants under the judgment is $1,163,526.59.

## III.  DISCUSSION

To defeat a motion to dismiss, a complaint must describe the claim in enough detail to give notice to the defendant.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In addition, it must be "plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint need only offer "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), unless the subject matter of that pleading

4

implicates a heightened standard. *See* Fed. R. Civ. P. 9. The circumstances supporting an action

sounding in fraud must be articulated with particularity under Rule 9.

## A.    The Sole Count – 11 U.S.C. § 523(a)(2)

The Complaint is brought under 11 U.S.C. § 523(a)(2) generally. Section 523(a)(2) bars

debtors, such as Defendants, from discharging debts "obtained by 'false pretenses, a false

representation, or actual fraud,' 11 U.S.C. § 523(a)(2), or, if made in writing, by a materially

false 'statement … respecting the debtor's … financial condition,' 11 U.S.C. § 523(a)(2)(b)."

*Lamar, Archer & Cofrin, Llp v. Appling*, 584 U.S. 709, 712 (2018). If the debt was obtained by

a statement respecting the debtor's financial condition, and "[i]f that statement is not in writing,

then, the associated debt may be discharged, even if the statement was false." *Id.*

Section 523(a)(2)(A) and (B) state in their entirety:

> (a)    A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b)
> of this title does not discharge an individual debtor from any debt-- …
>
> > (2)    for money, property, services, or an extension, renewal, or
> > refinancing of credit, to the extent obtained by--
> >
> > > (A)    false pretenses, a false representation, or actual fraud, other
> > > than a statement respecting the debtor's or an insider's financial
> > > condition;
> > >
> > > (B)    use of a statement in writing—
> > >
> > > (i) that is materially false;
> > >
> > > (ii) respecting the debtor's or an insider's financial
> > > condition;
> > >
> > > (iii) on which the creditor to whom the debtor is liable for
> > > such money, property, services, or credit reasonably relied;
> > > and
> > >
> > > (iv) that the debtor cause to be made or published with
> > > intent to deceive[.]

11 U.S.C. § 523(a)(2)(A), (B).

5

For this claim for relief to survive a motion to dismiss under section 523(a)(2)(A), Plaintiff must plausibly allege: (1) Defendants made a false representation or omission; (2) they knew that representation was false or made it with reckless disregard for the truth; (3) they made the statement with the intent to deceive Plaintiff; and (4) Plaintiff justifiably relied on the representation.  *See Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010).

While "it is only necessary to set forth a basic outline of fraud in order to alert the defendant of the purported fraud he is defending against[,]" *New Century Bank, N.A. v. Carmell* (*In re Carmell*), 424 B.R 401, 412 (Bankr. N.D. Ill. 2010), some level of particularity is required by Fed. R. Civ. P. 9.  "'Particularity' means 'the who, what, when, where, and how of the fraud … .'" *Schneider v. Billon* (*In re Billon*), No. 20 A 413, 2021 WL 2908970, at *3 (Bankr. N.D. Ill. July 12, 2021) (quoting *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018)).  "[F]raud requires more than [a] breach of promise … ." *U.S. ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005).  "[F]ailure to honor one's promise is (just) breach of contract, but making a promise that one *intends* not to keep is fraud." *Id.* (emphasis in original).

1.      **The Claim Under Section 523(a)(2)(A) versus Section 523(a)(2)(B)**

a.      **The Parties' Contentions**

The Complaint does not specify whether Plaintiff is proceeding under section 523(a)(2)(A), (B), or both.[1]  In their Motion, Defendants argue Plaintiff's claim is actionable only under section 523(a)(2)(B) because Plaintiff's allegations revolve around

---

[1] While the Complaint's omission of the specific subsection it is proceeding under can cause confusion, the Plaintiff is not required to plead legal theories.  *See Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010) (Stating that *Twombly* and *Iqbal* "do not undermine the principle that Plaintiffs in federal courts are not required to plead legal theories."); *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019) ("A complaint need only provide notice of a plausible claim; there is no rule requiring parties to plead legal theories or elements of a case.").

misrepresentations about NAR's financial condition.  If true, and if the false statements are only oral in nature, then the debt is dischargeable.  11 U.S.C. § 523(a)(2)(B).  Defendants point to allegations of false statements that NAR was a legitimate business, how NAR used the funds loaned, and that NAR would have funds available to repay the Note.

In Plaintiff's Response he states that "[t]his case proceeds under Section 523(a)(2)(A) … ."  Response, p. 3.  Plaintiff argues that the statements respecting financial condition referenced in section 523(a)(2)(A) must be interpreted to mean "what are understood by debtor-creditor professionals as 'financial statements.'"  Response, p. 8.  The exception to discharge under section 523(a)(2)(A) is not defeated if statements focus on repayment or intended use of funds.  Plaintiff claims the false representations were not about financial statements, but were representations about NAR's legitimacy, and that the money obtained would be used for a legitimate business.

> **b.     The Allegations in the Complaint do not Preclude a Cause of Action Under Section 523(a)(2)(A)**

Defendants are correct that section 523(a)(2)(A) does not apply to "a statement respecting the debtor's financial condition."  11 U.S.C. § 523(a)(2)(A).  Defendants are also correct that in *Lamar, Archer & Cofrin, Llp v. Appling*, 584 U.S. 709 (2018), the Supreme Court endorsed a broad reading of whether a statement *respects* the financial condition.  *See Id.* at 717 ("Use of the word 'respecting' in a legal context generally has a broadening effect, ensuring that a provision's scope covers not only its subject but also matters relating to that subject.").  Indeed, Plaintiff's assertion that "professionals" understand these types of statements to be limited to "financial statements" lacks any citation to authority.  Plaintiff's interpretation also seems to be the type of narrow reading of the limitations of 523(a)(2)(A) specifically rejected by *Appling*.  *See Blazek v. Kubin* (*In re Kubin*), Case No. 18-02853, 2022 WL 1467643, at *5 (Bankr. N.D. Ill. May 9,

7

2022) ("Section 523(a)(2)(B) is not limited solely to formal representations made by a debtor to a proposed creditor, such as in a loan application or financial statement.") (*citing Appling*, 138 S. Ct. 1752, 1759).

Where Defendants' argument falls short is that while the Complaint may contain allegations that respect a financial condition, it also contains other allegations that fall within section 523(a)(2)(A). Defendants combine and interpret the allegations together as describing a situation where the statements were respecting a financial condition and therefore must only be allowed under section 523(a)(2)(B). The court at this stage is not tasked with determining whether whatever words were specifically said between the parties were "more likely than not …" statements respecting a financial condition, but instead whether the conversations and actions that form the basis for a section 523(a)(2)(A) claim "*could* … have happened … ." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (discussing federal pleading requirements following *Twombly* and *Iqbal*) (emphasis in original).

Plaintiff's alleged false representations that fit under section 523(a)(2)(A) prominently include that Defendant Odeh represented that NAR bought and sold metals with the profits used to repay loans, had used the Plaintiff's loans for that purpose, and that Defendant Odeh personally delivered some of the early (never honored) checks representing payments and represented false payment terms of the Note. The Complaint alleges NAR was a Ponzi scheme and that NAR's financial condition was irrelevant to Plaintiff. Whether or not the decision to forbear was not entirely dependent on NAR's financial condition.

Regardless of which of the factual allegations in the Complaint relate to a claim under either or both section 523(a)(2)(A) or 523(a)(2)(B): "[i]f any reasonable inferences that support the claimant's claims follow from a complaint's deemed-true facts, the [c]ourt also must deem

truthful such inferences." *Martino v. Shakir* (*In re Shakir*), 643 B.R. 203, 210-11 (Bankr. N.D. Ill. 2022). Taking the facts as alleged in the Complaint, it is very reasonable to infer that Defendant Odeh met the elements of section 523(a)(2)(A) without making statements respecting anyone's financial condition. While Plaintiff may or may not have difficulty proving that at trial, Plaintiff has pleaded enough to survive a motion to dismiss for failure to state a claim under section 523 (a)(2)(A).

        **c.**        **Plaintiff is not Pursuing an Exception from Discharge Under Section 523(a)(2)(B)**

Defendants ask that this court also find that Plaintiff failed to state a claim under section 523(a)(2)(B), asserting that none of the relevant statements were made in writing. To survive under section 523(a)(2)(B), Plaintiff must plausibly allege that Defendants "made a materially false written statement about [their] financial condition with the intent to deceive, and that [Plaintiff] reasonably relied on the statement." *In re Cohen*, 507 F.3d 610, 613 (7th Cir. 2007).

> Plaintiff need not plead specific legal theories, so long as its allegations give notice of a legally sufficient claim. However, it cannot be the burden on the defendant to identify all plausible causes of actions arising from a plaintiff's pleading and seek to proactively dismiss each. That would be impossible for a defendant to do and it would impermissibly place the plaintiff's burden on the defendant. Instead, a defendant need only address the defects in the pleading as presented. It is for the plaintiff to raise in response such issues … .

*Handler v. Moore* (*In re Moore*), 620 B.R. 617, 632 (Bankr. N.D. Ill. 2020) (internal citations omitted).

Here, Defendants raised deficiencies that would prevent Plaintiff from excepting Defendants' discharge under section 523(a)(2)(B). In his Response, Plaintiff states that section 523(a)(2)(B) does not apply to the Complaint's allegations and that "[t]his case proceeds under Section 523(a)(2)(A)." Response, pp. 3, 8-10. Plaintiff has made clear that he is objecting to discharge per section 523(a)(2)(A).

9

**2.      Failure to Plead a Claim as Required by Federal Rules 8 and 9**

Defendants contend that the Complaint lacks sufficient detail as required by Fed. R. Civ. P. 8 and 9(b) and therefore must be dismissed.  While the rule requires particularity, it does not require

> … exact details in the complaint as a journalist would hope to relate them to the general public.  Rather, the federal pleader alleging fraud need only set forth the basic outline of the scheme, who made what misrepresentation and the general time and place of such misrepresentations, in order to adequately alert the defendant of the purported fraud he is defending against.

*Zmora v. Jacobs* (*In re Jacobs*), 403 B.R. 565, 573-74 (Bankr. N.D. Ill. 2009) (quotation omitted).  Defendants point to the absence of allegations identifying who was present for each of Defendants' statements, as well as the what, when, where, and how.  Defendants also claim the Complaint lacks sufficient facts on topics including: that NAR was a Ponzi scheme; that Defendants knew their statements were false, that Defendants possessed intent, and that Plaintiff justifiably relied on Defendants' misrepresentations.

**a.      Defendant Odeh**

The Complaint, however, contains allegations directed at each of the required elements of section 523(a)(2)(A) and puts Defendant Odeh on notice and contains allegations to meet the more rigorous particularity pleading requirements of Fed. R. Civ. P. 9(b).

Here, the essential questions required by Rule 9(b) are all answered.  Who: Defendant Odeh made various representations to Plaintiff after loaning money to NAR through Defendant Odeh's brother.  (Plaintiff includes additional aliases used by the brother).  What: Plaintiff agreed to holdout or "forbear" on collection efforts against NAR based on false representations by Defendant Odeh.  Where: the Complaint alleges Plaintiff and Defendant Odeh became acquainted through their involvement and frequenting of the same charitable and community

10

organizations in the Chicago area.  NAR was listed as operating in Bridgeview, IL and that Defendant Odeh's larger Ponzi scheme operated throughout the Chicago area.  When: Plaintiff makes numerous allegations of specific dates, but of most relevance, the Note was executed by Defendant Odeh on September 9, 2019.  How: Defendant Odeh made various assurances that NAR was a legitimate business and that, with the Note, Plaintiff should delay collection efforts, despite Defendant Odeh knowing NAR was a Ponzi scheme and not a legitimate business.  These actions were attributed to Defendant Odeh and are adequate to plead the elements required to state a claim under section 523(a)(2)(A).

The required elements of Section 523(a)(2)(A) are: (1) Defendant made a false representation or omission; (2) he knew that representation was false or he made it with reckless disregard for the truth; (3) he made the statement with the intent to deceive Plaintiff; and (4) Plaintiff justifiably relied on the representation.  *See Ojeda*, 599 F.3d at 716-17.  First, as discussed, Defendant Odeh made, *inter alia*, a false representation that NAR was a legitimate business.  Second, Plaintiff alleges Defendant Odeh knew the representation was false.  Defendants claim that is conclusory.  Whether or not it is, Plaintiff also alleges Defendant Odeh was at least a co-owner of NAR and it is a reasonable inference that a company's owner would know it was a Ponzi scheme.  Additionally, Plaintiff alleges Defendant Odeh colluded in the Ponzi scheme with other individuals, suggesting he knew it was a Ponzi scheme.

Third, Plaintiff alleges Defendant Odeh made the false representations intentionally to deceive Plaintiff to obtain a loan forbearance.  Intent can be alleged generally. Fed. R. Civ. P. 9(b).  While excused from the particularity requirements of Fed. R. Civ. P. 9(b), allegations concerning intent must still meet the factual requirements of Fed. R. Civ. P. 8.  *Iqbal*, 556 U.S. 686-87.  The intent here can reasonably be inferred from the factual allegations.

11

Defendant Odeh, as at least a co-owner of NAR, knew NAR was a Ponzi scheme.  Ponzi schemes operate by paying investors with the money of other investors and therefore cannot deal with investors removing their money without finding more people to invest money.  *See Dream Med. Grp., LLC v. Church Enterprises,* (*In re Church*), 657 B.R. 431, 440 (Bankr. D.S.C. 2024) (discussing Ponzi schemes).  Forbearance is valuable to a Ponzi scheme to give it more time to solicit funds and keep the scheme alive.  It is reasonable to infer Defendant Odeh knew Plaintiff would not provide a forbearance if he knew NAR was a Ponzi scheme.  Therefore, Defendant Odeh intentionally told Plaintiff NAR was a legitimate business to obtain the forbearance. Again, whether Plaintiff will actually be able to prove his allegations surrounding intent at trial is a question for a later time.

Fourth and finally, Plaintiff justifiably relied on the false representation that NAR was a legitimate business.  Defendants allege Plaintiff's reliance was not justified since NAR had already issued Plaintiff over a million dollars of bounced checks.  That is an argument Defendants can make in a motion for summary judgment or at trial.  When contemplating a motion to dismiss the court must "draw all inferences in [the plaintiff's] favor." *Reger Development, LLC*, 592 F.3d at 763.  The justifiable reliance required under section 523(a)(2)(A) is "a less demanding standard than reasonable reliance." *Attorneys' Title Guar. Fund v. Wolf*, (*In re Wolf*), 519 B.R. 228, 247 (Bankr. N.D. Ill. 2014).  "[J]ustifiable reliance requires only that the creditor did not blindly rely upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* (quotations omitted).

It is reasonable to infer from the allegations that, when agreeing to the terms of the Note, Plaintiff believed Defendant Odeh's assurances that NAR was a legitimate business.  While the

prior bad checks appear as obvious red flags in hindsight, Plaintiff also alleges Defendant Odeh

claimed NAR's legitimate profits would be used to repay the Note under specific terms.  When

making reasonable inferences in Plaintiff's favor, it is possible to say both that Plaintiff relied on

Defendant Odeh's statements when agreeing to a forbearance and that the reliance was

justifiable.

### b.    Defendant Salameh

While Plaintiff successfully pleaded a claim against Defendant Odeh, Plaintiff failed to

do so against Defendant Salameh.  The only allegations that specifically refer to Salameh are (1)

that she executed the Note and (2) that she "adopted and joined in the representations made by

Defendant Awad Odeh."  Complaint, ¶¶ 27, 29, 30, 37.  The Complaint also alleges that both

"Defendants" knew NAR did not operate a legitimate business and a number of other likely

conclusory allegations involving both Defendants.

Again, Fed. R. Civ. P. 9(b) requires a certain level of particularity in pleadings, including

the who, what, where, when, and how of the fraud.  For Defendant Salameh, based on the

wording of the allegation, it is largely unclear what 'adopting' and 'joining' in Defendant Odeh's

allegations entailed.  Is that allegation only referring to the fact that they both executed the Note?

Did she verbally agree to all the statements made by Defendant Odeh?  Based on the language, a

reasonable inference is impossible.  Without that, the remaining factual allegations are

essentially that Defendant Salameh executed the Note.  The Complaint alleges there was a larger

scheme employed by 'Defendants,' but the paragraph continues on to describe the efforts only of

Defendant Odeh.  Complaint, ¶ 42.  Unlike the allegations against Defendant Odeh: there are no

allegations that Defendant Salameh was a co-owner of NAR, that Defendant Salameh delivered

13

checks to Plaintiff, that Defendant Salameh operated the Ponzi scheme, and that she intentionally and falsely misrepresented that NAR was a legitimate business.

The factual allegations involving Defendant Salameh in the Complaint are sparse.  Her inclusion appears to be an afterthought.  In a number of the allegations, the Complaint switches between the plural 'Defendants' and referencing an unspecified single 'Defendant' with no explanation and sometimes within the same sentence.  Complaint, ¶¶ 47-51.  One of the Complaint's most intriguing, lengthy, and important paragraphs, that NAR and Defendant Odeh were operating a "classic Ponzi scheme" initially mentions both Defendants, but then continues to only catalogue the efforts of Defendant Odeh and other unnamed co-conspirators and purported agents of NAR.  Complaint, ¶ 42.  Even read in a light most favorable to Plaintiff, it is impossible to read the allegations as stating a claim against Defendant Salameh.

The allegations in the Complaint, therefore, do not support a plausible claim for relief under section 523(a)(2)(A) against Defendant Salameh.  The court will grant the motion to dismiss as to Defendant Salameh only.

**B.      Leave to Amend**

In the Seventh Circuit, leave to amend should "be freely given … [u]nless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted … ." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (quotation omitted).  While it is not clear that Defendant Salameh actually participated in making the false misrepresentations that underlay the claim against Defendant Odeh, or, if so, which representations are attributed to her, it is not clear from the filings that any amendment would be futile.  Therefore, Plaintiff is granted leave to amend his complaint.

14

## IV.  CONCLUSION

For all of the reasons stated above, the motion to dismiss the Complaint is denied as to

Defendant Odeh and granted as to Defendant Salameh, with leave to amend.  The court will enter

an order, consistent with this ruling.

ENTERED:

Date:   August 9, 2024

_____
Honorable DAVID D. CLEARY
United States Bankruptcy Judge

15